UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRAYAN MEDINA ARTEAGA,<br><br>Defendant. | Case No. 24-cr-00230-RS-1<br><br>**ORDER GRANTING MOTION TO COMPEL** |

## I. INTRODUCTION

Defendant Brayan Medina Arteaga moves to compel disclosure of a police surveillance location in connection with his Motion to Suppress. Sergeant Justin Erb allegedly observed the Defendant in possession of crack cocaine from a San Francisco Police Department confidential surveillance location. The Defendant argues that disclosure of Sgt. Erb's surveillance location is necessary for his counsel adequately to cross-examine Sgt. Erb. The government asserts that a "surveillance post privilege," pursuant to the Federal Rules of Evidence § 501, protects this information. In particular, the government contends that this information is privileged because disclosure would threaten future law enforcement operations and expose private citizens to risk if it is known that their premises are used by law enforcement. The Defendant moves for disclosure of the location under a protective order that allows for defense attorney's eyes only. For the reasons outlined below, Defendant's Motion to Compel is granted.

## II. BACKGROUND

Mr. Medina Arteaga moves to suppress evidence seized during a narcotics spotting operation

on October 24, 2023, around Seventh and Stevenson Streets in San Francisco. Mr. Medina Arteaga requested and was granted an evidentiary hearing on his Motion to Suppress, focusing in particular on (1) what Medina Arteaga removed from his backpack on October 24, 2023 and (2) Medina Arteaga's alleged "countersurveillance" maneuvers. Sgt. Erb claims he saw Mr. Medina Arteaga remove a specific "off white chunky" object in a plastic baggie from "somewhere less than 100 feet" away. Mr. Medina Arteaga contends Sgt. Erb must be mistaken because Defendant removed only a small bottle of alcohol from that bag. There are additional contested facts around Mr. Medina Arteaga's movements and how "furtive" they appeared. The defense contends that Sgt. Erb's surveillance location is central to these disputes, and therefore its Motion to Compel should be resolved before the Motion to Suppress hearing.

### III. LEGAL STANDARD

The government asserts a privilege over surveillance post information under Federal Rule of Evidence § 501. Neither the Supreme Court nor the Ninth Circuit have addressed a "surveillance post privilege" akin to the one provided by California's evidence code. However, several federal circuits have examined a surveillance post privilege similar to California's within the context of Rule 501 of the Federal Rules of Evidence. These courts have found that the surveillance post privilege is comparable to the informant's privilege and therefore subject to the balancing test articulated in *Roviaro v. United States,* 353 U.S. 53, 62 (1957) (finding, in the context of anonymous informants, courts should consider "the particular circumstances of each case," including possible defenses, the significance of the withheld information, and any other relevant factors). *See, e.g., United States v. Cintolo,* 818 F.2d 980, 1002 (1st Cir. 1987); *United States v. Van Horn,* 789 F.2d 1492, 1507–08 (11th Cir.), *cert. denied,* 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986); *United States v. Harley,* 682 F.2d 1018, 1020 (D.C.Cir. 1982). *Roviaro* requires a balancing of the need for withholding the identity of confidential informants with a defendant's right to confront his accusers. 353 U.S. at 628–29.

This more general law enforcement privilege is designed "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect

witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Quiroz v. Horel*, No. C 11-0016 LHK (PR), 2014 WL 572381, at *3 (N.D. Cal. Feb. 11, 2014). However, it is a qualified privilege that requires the court to "balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." *S.E.C. v. Gowrish*, No. C 09-05883 SI, 2010 WL 1929498, at *1 (N.D. Cal. May 12, 2010) (quoting *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1341 (D.C.Cir.1984)).

In analogous cases, defendants have the burden of proving that the privileged material is needed for their defense. "A defendant seeking to learn the location of a police surveillance post should ordinarily show that he needs the evidence to conduct his defense and that there are no adequate alternative means of getting at the same point." *United States v. Rigmaiden*, 844 F. Supp. 2d 982, 991 (D. Ariz. 2012) (quoting *United States v. Harley,* 682 F.2d 1018, 1020 (D.C.Cir.1982)). Other federal cases have repeated this principle. *See United States v. Cintolo,* 818 F.2d 980, 1002 (1st Cir.1987); *Sanders v. Crotty,* No. 06–C–5159, 2008 WL 905993 at *6 (N.D.Ill., Apr. 3, 2008). However, before the government may assert the law enforcement privilege, "the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *S.E.C. v. Gowrish*, No. C 09-05883 SI, 2010 WL 1929498, at *1 (N.D. Cal. May 12, 2010).

## IV. DISCUSSION

**A. Sgt. Erb's location is factually relevant to determine whether the government had probable cause to arrest the Defendant.**

Sgt. Erb is the sole witness for the government in establishing the existence of probable cause. At the core of Defendant's Motion to Suppress is the contention that Sgt. Erb either could not see or was mistaken as to the object in the Defendant's hands. The government contends that the location is therefore irrelevant because the defense has claimed that Sgt. Erb has entirely fabricated seeing the drugs. Instead, the Defense is casting doubt on Sgt. Erb's version of the events, which is the crux of the Motion to Suppress hearing. The Defendant in this case, where

there is no video evidence or corroborating witness to the events constituting probable cause, has provided concrete explanations as to how the surveillance location would be used to cross-examine Sgt. Erb. Based on the relevance and demonstrated need for this information, the surveillance location is material.

**B. Any law enforcement privilege gives way to the Defendant's need for full information to challenge probable cause.**

Evaluating a claim of law enforcement privilege requires balancing the public's interest in effective law enforcement and the cooperating property owner's interest in anonymity against a criminal defendant's strong interest in effective cross-examination of adverse witnesses at a suppression hearing. *United States v. Green*, 670 F.2d 1148, 1156 (D.C. Cir. 1981). "The location of a police observation post may establish whether the observing officer's view was open or obstructed, whether the angle of the officer's view made the observations easy or difficult, and whether the distance from the criminal activity enhances or detracts from an officer's claimed observation of detail." *Id.*

The government argues that the disclosure of location and manner of surveillance would educate potential lawbreakers on avoiding future surveillance, would educate third parties on conducting illegal surveillance, would frustrate future similar surveillance activities, and would pose a risk to individuals conducting surveillance or allowing it to occur on their premises. Additionally, the government argues that disclosing the specific location would breach promises of confidentiality or anonymity of private citizens assisting law enforcement, thus discouraging future cooperation.

The Defendant argues that without disclosure of the surveillance location, counsel cannot establish the limits of Sgt. Erb's observations. In *Green*, the public's interest in law enforcement outweighed the defendant's interest in cross-examination because the officers had already conceded that they did not witness every step of the transaction. 670 F.2d at 1157. Here, Sgt. Erb does claim to have seen the specific object in the Defendant's hand. Additionally, neither the government nor the defense can directly reinforce or rebut Sgt. Erb's alleged observations, as there

ORDER GRANTING MOTION TO COMPEL
CASE NO. 24-cr-00230-RS-1

are no other witnesses to nor any video recording of the night in question. *Contra Harley*, 682 F.2d at 1021 (where a video tape was taken from the same vantage point, obviating the need for disclosure of the surveillance location); *Green*, 670 F.2d at 1156–57 (where two officers observed the alleged transaction in daylight).

The government argues that cross-examination of Sgt. Erb based on distance, angle, elevation, lighting, obstructions, possible cross traffic, and Sgt. Erb's specific view of the Defendant are sufficient to protect Defendant's interests. However, given the centrality of Sgt. Erb's observations to Defendant's arrest, the circumstances surrounding the alleged interaction, and Sgt. Erb's assertions of California statutory privilege in the state proceedings, Sgt. Erb's previous answers are insufficient.

Defense counsel's solution of an attorney's eyes only protective order for the surveillance location properly balances the concerns of both defense and the government. Disclosure of sensitive law enforcement information on an attorneys' eyes only basis has satisfied government safety concerns in previous cases. *See, e.g.*, *USA v. Martinez*, No. 15CR00314YGR1KAW, 2016 WL 1756216, at *2 (N.D. Cal. May 3, 2016) (where the government conceded that sharing informant information with defense counsel under a protective order alleviated security concerns).

## V. CONCLUSION

The Motion to Compel is granted. Parties should file a proposed protective order, detailing that defense counsel will not disclose the surveillance location to her client or anyone else besides those necessary to conduct further investigation.

**IT IS SO ORDERED**.

Dated: September 24, 2024

_____
RICHARD SEEBORG
Chief United States District Judge